## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

JAMIE JOHNSON                                    CIVIL ACTION

VERSUS                                              No. 24-170

RANDY SMITH, ET AL                                 SECTION I

### ORDER AND REASONS

Before the Court are two motions. The first is a motion[1] *in limine* brought by plaintiff Jamie Johnson ("plaintiff"). The second is a motion[2] for summary judgment filed by defendants Randy Smith ("Smith"), John Connolly ("Connolly"), and Chris Vado ("Vado") (collectively, "defendants")[3] with respect to plaintiff's federal and state-law claims. For the reasons set forth below, the Court grants summary judgment as to plaintiff's federal claims on the ground of qualified immunity, and such claims will be dismissed with prejudice. The Court in turn dismisses plaintiff's state-law claims without prejudice. Plaintiff's motion *in limine* is dismissed as moot.

### I. BACKGROUND

On January 17, 2023, R.C., plaintiff's daughter, was at the home of a classmate, where she was allegedly completing her schoolwork with Andree Prados, her classmate's mother and the homeowner.[4] While R.C. was at Prados's home, Lieutenant Bill Johnson ("Lt. Johnson") and Deputies Joel Bratton and Christopher

---

[1] R. Doc. No. 41.
[2] R. Doc. No. 53.
[3] The motion is also brought by defendant Bill Johnson. However, he is no longer a party to this case as he was no longer a named defendant once plaintiff failed to identify him as a defendant in her second amended complaint. *See* R. Doc. No. 60.
[4] *Id.* ¶ 9.

Vado of the St. Tammany Parish Sheriff's Office arrived at the home in an effort to locate a person of interest related to the investigation of a residential burglary.[5] The deputies detected the odor of marijuana while standing on the front porch of the residence and observed what they believed to be a partially burnt marijuana cigarette on the outside table.[6] When Prados opened the front door to speak with the deputies, the deputies noticed a stronger marijuana odor emanating from the house.[7] At that point, the deputies entered the home to investigate an apparent drug violation.[8]

When the officers entered the residence, a male juvenile fled the house, and he was subsequently apprehended in the backyard by Lt. Johnson, who found a knife on the juvenile.[9] A pat down of another male juvenile, A.M., led to a physical altercation, which resulted in A.M. being brought to the floor and placed in handcuffs.[10] After A.M. was escorted out of the home, the deputies turned their attention to the other persons in the home.[11] Later, Lt. Johnson located the person of interest hiding in the master-bedroom closet.[12]

Although the parties dispute the exact nature of the interaction, Lt. Johnson at one point approached Prados and sought to have her relocate to the living room.[13] Regardless of whether Lt. Johnson roughly pulled or gently escorted Prados to the

---

[5] R. Doc. No. 53-1, ¶ 1; R. Doc. No. 62-14, ¶ 1.
[6] R. Doc. No. 53-1, ¶ 5; R. Doc. No. 62-14, ¶ 5.
[7] R. Doc. No. 53-1, ¶ 7; R. Doc. No. 62-14, ¶ 7.
[8] R. Doc. No. 53-1, ¶¶ 9–10; R. Doc. No. 62-14, ¶¶ 9–10.
[9] R. Doc. No. 53-1, ¶¶ 11–13; R. Doc. No. 62-14, ¶¶ 11–13.
[10] R. Doc. No. 53-1, ¶¶ 18–20; R. Doc. No. 62-14, ¶¶ 18–20.
[11] R. Doc. No. 53-1, ¶ 23; R. Doc. No. 62-14, ¶ 23.
[12] R. Doc. No. 53-1, ¶ 60; R. Doc. No. 62-14, ¶ 60.
[13] R. Doc. No. 53-1, ¶ 24; R. Doc. No. 62-14, ¶ 24.

living room, R.C. physically intervened, struck Lt. Johnson and Vado, and resisted arrest.[14] Eventually, Lt. Johnson and Vado brought R.C. to the floor and handcuffed her.[15] She subsequently pled no contest to two counts of battery of a police officer and one count of resisting an officer.[16] Deputy Connolly then arrived at the scene and entered the home.[17]

What happened to R.C. once she was handcuffed and seated on the ground is the subject of this lawsuit. According to plaintiff's version of events, while R.C. was seated on the ground in an uncomfortable position, Vado "began to speak with R.C. about the situation."[18] After the situation calmed, Vado stood up and stepped back from R.C.[19] Several moments later, R.C. attempted to stand up, which would enable her to sit on the couch.[20] R.C. claims that she was not told that she had to remain seated or that she could not sit on the couch.[21] When R.C. had nearly risen to her feet, Vado gave a verbal command to stay on the ground as he simultaneously grabbed R.C. by the back of the neck and slammed her to the ground.[22] R.C. allegedly could not breathe because Vado and Connolly were on top of her and holding her face-

---

[14] R. Doc. No. 53-1, ¶¶ 28–29; R. Doc. No. 62-14, ¶¶ 28–29.
[15] R. Doc. No. 53-1, ¶¶ 30–31; R. Doc. No. 62-14, ¶¶ 30–31.
[16] R. Doc. No. 53-9.
[17] R. Doc. No. 53-1, ¶ 40; *see* R. Doc. No. 62-14, ¶ 40.
[18] R. Doc. No. 60, ¶¶ 13–14.
[19] *Id.* ¶ 15.
[20] *Id.* ¶ 16.
[21] *Id.* ¶ 17.
[22] *Id.* ¶¶ 18–19; R. Doc. No. 62, at 13.

down.[23] At this juncture, while Vado was pinning R.C. to the ground, Connolly allegedly came behind R.C. and placed his knee on her back.[24]

On the other side, defendants claim that Vado and Lt. Johnson ordered R.C. to remain seated.[25] As Connolly entered the home, he found a chaotic situation and decided to conduct a protective sweep of the area near the couch where Prados and the other occupants were sitting.[26] While Connolly was conducting the protective sweep, R.C. stood in contravention of Vado's previous order.[27] Vado then ordered R.C. to remain seated, but she refused and continued to stand.[28] At that point, once R.C. refused to comply, Vado grabbed R.C.'s shoulder and escorted her to the ground.[29] R.C. continued to actively resist on the ground, for which reason Connolly went to assist Vado.[30] Connolly attempted to subdue R.C. by grabbing her left arm and placing his shin on R.C.'s buttocks.[31] Defendants contend that Connolly did not place all his bodyweight on R.C. and that he placed his shin on her buttocks for approximately ten seconds.[32] Thereafter, the deputies removed R.C. from the house and escorted her to a patrol vehicle.[33]

---

[23] R. Doc. No. 60, ¶ 21.

[24] *Id.* ¶ 25.

[25] R. Doc. No. 53-1, ¶ 32.

[26] *Id.* ¶ 67.

[27] *Id.* ¶ 69.

[28] *Id.* ¶¶ 70–71.

[29] *Id.* ¶ 72.

[30] *Id.* ¶ 78.

[31] *Id.* ¶ 81.

[32] *Id.* ¶¶ 88, 90.

[33] *Id.* ¶ 92.

Plaintiff, in her capacity as tutor for R.C., then filed this lawsuit. In her second amended complaint, she alleges that R.C. suffered a fractured vertebra as a result of Vado's and Connolly's use of force against R.C. while she was handcuffed on the ground.[34] Plaintiff asserts both federal and state claims.

With respect to her federal claims, plaintiff sues both Vado and Connolly for excessive force pursuant to 42 U.S.C. § 1983.[35] She also sues Vado and Connolly pursuant to § 1983 for failure to intervene.[36] With respect to her state-law claims, plaintiff brings state-law tort claims of negligence and battery against Vado and Connolly.[37] She also seeks to recover from Randy Smith, the Sheriff of St. Tammany Parish, on a theory of *respondeat superior*.[38] Finally, plaintiff sues Vado and Connolly for violations of the Louisiana Constitution.[39]

After plaintiff filed her motion *in limine*, defendants filed their motion for summary judgment as to plaintiff's state and federal claims. With respect to plaintiff's federal claims, defendant's assert that plaintiff's § 1983 excessive-force claims are barred pursuant to the doctrine announced in *Heck v. Humphrey*, 512 U.S. 477 (1994).[40] In addition, defendants assert that plaintiff's § 1983 excessive-force claims necessarily fail because defendants Vado and Connolly enjoy qualified

---

[34] R. Doc. No. 60, ¶ 26.
[35] *Id.* ¶¶ 30–35.
[36] *Id.* ¶¶ 52–56.
[37] *Id.* ¶¶ 42–51.
[38] *Id.* ¶¶ 57–59.
[39] *Id.* ¶¶ 36–41.
[40] R. Doc. No. 53-2, at 8.

immunity.[41] Defendants contend that summary judgment should be granted as to plaintiff's § 1983 failure-to-intervene claims because of an absence of evidence to prevail on those claims as well as qualified immunity.[42] With respect to the state-law claims, defendants assert that summary judgment should be granted because plaintiff cannot establish causation for R.C.'s injuries.[43]

## II. STANDARDS OF LAW

As this case involves the "tricky"[44] relationship between the standards for summary judgment and qualified immunity, the Court addresses each in turn.

### a. Standard for Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute of material fact exists when 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Loftin v. City of Prentiss*, 33 F.4th 774, 779 (5th Cir. 2022) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "Although the substance or content of the evidence submitted to support or dispute a fact on summary judgment must be admissible . . . the material may be presented in a form that would not, in itself, be admissible at trial." *JW Dev., LLC v. Indep. Specialty Ins. Co.*, No. 22-cv-390, 2022 WL 3139133, at *1 (E.D. La. Aug. 5, 2022) (Africk, J.) (quoting *Lee v. Offshore Logistical & Transp., LLC*, 859 F.3d 353, 355 (5th Cir. 2017)).

---

[41] *Id.* at 35–36, 40.
[42] *Id.* at 34–35, 39; R. Doc. No. 63, at 13–14.
[43] R. Doc. No. 53-2, at 42.
[44] *Joseph ex rel. Est. of Joseph v. Bartlett*, 981 F.3d 319, 328 (5th Cir. 2020).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party meets this burden by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A); *see also Celotex Corp.*, 477 U.S. at 323. When the movant does not bear the burden of persuasion at trial, the movant need only demonstrate the absence of evidence supporting the nonmovant's case and so "need not *negate* the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (emphasis in original); *see also Celotex Corp.*, 477 U.S. at 322–23. "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Little*, 37 F.3d at 1075.

When the movant satisfies its initial burden, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Id.* at 1075; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

However, this rule applies "only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Courts will "resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at

1075. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 550 U.S. at 380. Accordingly, the nonmovant's "burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little*, 37 F.3d at 1075 (citations omitted).

When ruling on a motion for summary judgment, courts do not usurp or "denigrate" the role of the jury: "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255.

### b. Standard for Qualified Immunity

"Qualified immunity protects government officials from liability for damages when they violate the law, but nonetheless reasonably could have believed that they were acting lawfully." *Ramirez v. Killian*, 113 F.4th 415, 421 (5th Cir. 2024). It serves to balance the competing interests of vindicating constitutional protections and insulating officials from the undue interference caused by potentially disabling threats of litigation. *See id.* Qualified immunity achieves this balance by "provid[ing] ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Officers are entitled to qualified immunity for claims brought pursuant to § 1983 unless (1) they violated a federal

statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time. *District of Columbia v. Wesby*, 583 U.S. 48, 62–63 (2018).

The application of the qualified-immunity standard changes the norms of summary judgment. *See Joseph ex rel. Est. of Joseph v. Bartlett*, 981 F.3d 319, 328–29 (5th Cir. 2020). Qualified immunity modifies the typical burden-shifting framework of summary judgment described above. Once qualified immunity is asserted by the defendant public officials, the burden shifts to the plaintiff to show that the defense is not available. *Id.* at 329–30. Unlike the typical scenario, the official need not demonstrate an absence of a genuine dispute of material facts to shift the burden. *Id.* at 330. To meet their burden, plaintiffs must, as do other non-movants for summary judgment, adduce evidence to demonstrate a genuine dispute of material facts. *Id.* However, plaintiffs overcoming qualified immunity must go further to satisfy a more strenuous burden. In addition to adducing sufficient evidence to demonstrate a mere dispute, plaintiffs must also demonstrate that their version of the facts constitute a violation of clearly established law. *Id.* at 329–330. Where plaintiffs fail to cite or identify law clearly establishing a constitutional violation, denial of qualified immunity is not justified even if, given the state of the law, plaintiffs "could have done so." *Id.* at 345.

# III. ANALYSIS

## a. Deputies Vado and Connolly Are Entitled to Qualified Immunity on Plaintiff's § 1983 Excessive-Force Claims.

Since defendants have sufficiently raised the defense of qualified immunity with respect to plaintiff's claims for excessive force,[45] the burden is now on plaintiff to overcome the defense. *Bartlett*, 981 F.3d at 329–30. That task requires plaintiff to demonstrate (1) a genuine dispute of material fact as to whether Vado and Connolly violated R.C.'s federal statutory or constitutional rights, and that (2) the unlawfulness of their alleged conduct was clearly established at the time. *See id.* "The court applies current law to the first step and the law at the time of the incident to the second step, which may sometimes result in applying different tests to the two steps." *Bush v. Strain*, 513 F.3d 492, 500 (5th Cir. 2008) (internal quotation marks and citation omitted).

The relevant constitutional provision governing plaintiff's claims is the Fourth Amendment, which secures the right to be from excessive force during a seizure. *See Bartlett*, 981 F.3d at 332. "To establish a claim of excessive force under the Fourth Amendment, plaintiffs must demonstrate: (1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Killian*, 113 F.4th at 424 (internal quotation marks and citation omitted). The Fifth Circuit has explained that the second and third elements of the cause of action "collapse into a single objective-reasonableness inquiry." *Id.*; *see also Graham v. Connor*, 490 U.S. 386, 397 (1989) (emphasizing that the "question is

---

[45] R. Doc. No. 53-2, at 35–36, 40.

whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation").

This inquiry is necessarily fact-intensive and case-specific. *Bartlett*, 981 F.3d at 332. Accordingly, the test for objective reasonableness "is not capable of precise definition or mechanical application." *Graham*, 490 U.S. at 396.  Nevertheless, the so-called *Graham* factors inform the need for force. *Bartlett*, 981 F.3d at 332. These factors are: (1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight. *Id.*

In addition to considering these factors, the Court must also consider the facts from "the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Id.* (internal quotation marks and citation omitted). "[T]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97. Accordingly, the reasonableness standard provides "fair leeway for enforcing the law in the community's protection." *Buehler v. Dear*, 27 F.4th 969, 981 (5th Cir. 2022) (internal quotation marks and citation omitted).

11

The objective reasonableness of the officer's use of force must be judged not only by the need for force but also by the relationship between the need for force and the amount of force used. *See Bartlett*, 981 F.3d at 332. Accordingly, although there may be reason to use force, such as a suspect defying instructions, an officer must also apply the appropriate degree of force. *Id.* In other words, "even an officer who may lawfully use or threaten force must appropriately calibrate the amount of force he employs to the need for force he confronts." *Hanks v. Rogers*, 853 F.3d 738, 747 (5th Cir. 2017). An officer's force is calibrated when it is "measured" and "corresponds" to a suspect's escalating verbal and physical resistance. *See Bartlett*, 981 F.3d at 332. "The timing, amount, and form of a suspect's resistance are key to determining whether the force used by an officer was appropriate or excessive." *Id.* Therefore, whether a use of force was justified often turns on whether the suspect is passively or actively resisting. *Id.* at 333. Abruptly or immediately resorting to overwhelming physical force is not measured and thus excessive. *See Hanks*, 853 F.3d at 747; *cf. Newman v. Guedry*, 703 F.3d 757, 763 (5th Cir. 2012) (concluding that the use of force is objectively unreasonable when "the officers immediately resorted to taser and nightstick without attempting to use physical skill, negotiation, or even commands"). Similarly, "[f]orce must be reduced once a suspect has been subdued." *Bartlett*, 981 F.3d at 335.

In addition to demonstrating that Vado's and Connolly's uses of force were objectively unreasonable based on her account of the facts, plaintiff must also demonstrate that such uses of force were violations of clearly established law. *See id.*

at 329–30.  A "clearly established" legal principle for qualified-immunity purposes is established only in certain circumstances: "(1) where it is provided by controlling authority; (2) where it is provided by a robust consensus of persuasive authority; and (3) where its violation is obvious." *Killian*, 113 F.4th at 422 (internal quotation marks and citations omitted). Unpublished opinions of the Fifth Circuit are not controlling but do constitute persuasive authority. *See id.* at 426. Nor are the decisions of the district courts controlling. *Carpenter v. Webre*, No. 17-cv-808, 2018 WL 1453201, at *12 (E.D. La. Mar. 23, 2018) (Morgan, J.); *see also Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case. . . . [D]istrict court decisions—unlike those from the courts of appeals—do not necessarily settle constitutional standards or prevent repeated claims of qualified immunity." (internal quotation marks and citations omitted)).

The clarity of a clearly established legal principle is such that "every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Wesby*, 583 U.S. at 63. Accordingly, then-existing precedent must do more than merely "suggest[]" the legal principle. *Id.* While "a case directly on point" is not required, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). Plaintiffs "need to identify a case where an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment." *Wesby*, 583 U.S. at 64. "[T]he

requirement to identify an analogous case and explain the analogy" is "strictly enforce[d]." *See Bartlett*, 981 F.3d at 346.

For a legal principle to be sufficiently clear, it must be defined with a "high degree of specificity." *Id.* (internal quotation marks and citation omitted). "The rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* (internal quotation marks and citation omitted). "A rule is too general if the unlawfulness of the officer's conduct does not follow immediately from the conclusion that [the rule] was firmly established." *Id.* (internal quotation marks and citation omitted). Such specificity "is especially important in the Fourth Amendment context," since "[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." *See Mullenix v. Luna*, 577 U.S. 7, 14 (2015) (internal quotation marks and citation omitted).

At this second step of the qualified-immunity analysis, courts must also "consider whether the officer's use of force, though a violation of the Fourth Amendment, was nevertheless objectively reasonable in light of clearly established law at the time the challenged conduct occurred." *Bush*, 513 F.3d at 501; *Griggs v. Brewer*, 841 F.3d 308, 313 (5th Cir. 2016) ("In excessive force cases, the second prong of the analysis is better understood as two separate inquiries: whether the allegedly violated constitutional rights were clearly established at the time of the incident; and, if so, whether the conduct of the defendants was objectively unreasonable in light of that then clearly established law." (internal quotation marks and citation omitted)).

14

"Even though an officer's use of force must be objectively unreasonable to violate constitutional rights, a defendant's violation of constitutional rights can still be objectively reasonable if the contours of the constitutional right at issue are sufficiently unclear." *Bush*, 513 F.3d at 501. In practice, the qualified-immunity standard "gives ample room for mistaken judgments." *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012).

### i. Deputy Vado

Having explained the substance of plaintiff's burden and the procedure by which she may satisfy it, the Court addresses whether plaintiff has in fact overcome Vado's and Connolly's qualified-immunity defense. The Court begins with the force used by Vado. This Court has discretion to bypass the merits of the constitutional violation and directly address whether Vado's actions contravene clearly established law. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). The Court exercises its discretion to first consider the second prong of the qualified immunity analysis.

In order to satisfy the second prong of qualified immunity, plaintiff must demonstrate that, on her version of events (insofar as supported by competent evidence), Vado violated clearly established federal law. *See Bartlett*, 981 F.3d at 329–30. Plaintiff contends that, once R.C. was handcuffed and seated on the floor, she was calm and neither resisting nor struggling with Vado.[46] After several minutes, R.C. decided to sit on the couch because she was in an uncomfortable position on the

---

[46] R. Doc. No. 62, at 8.

floor.[47] Prior to that point, Vado had not ordered her to remain seated.[48] As R.C. was standing up, Vado placed his hand's either on her neck, back, or shoulder, "slammed" her to the ground, and  shoved her face into the floor.[49]

Plaintiff identifies a single case that allegedly clearly establishes the illegality of Vado's use of force. She cites a decision of this district, *Curran v. Aleshire*, 67 F. Supp. 3d 741 (E.D. La. 2014) (Zainey, J.), for the proposition that "[i]t is clearly established that, when a teenager is 'not resisting arrest, attempting to escape, or otherwise posing a threat at the time of the alleged use of force," slamming her to the floor and causing her injury is excessive.[50]

By citing only *Curran*, plaintiff has manifestly failed to satisfy the second prong of the qualified-immunity analysis. As a decision of a district court, *Curran* neither is a controlling authority nor evinces a robust consensus of persuasive authority. *See Killian*, 113 F.4th at 422. Thus, even if rightly decided, *Curran* does not clearly establish the principle for which it is cited by plaintiff.

Furthermore, the facts in this case are significantly different than those in *Curran*. When R.C.—unprompted and without indicating to Vado her alleged intention to sit on the couch—began to stand up, Vado could have reasonably believed that force was justified consistently with the *Graham* factors. First, battery of an officer is a serious offense. *See id.* at 752. Second, Vado could have reasonably believed

---

[47] *Id.* at 11.
[48] *Id.* at 12.
[49] *Id.*
[50] *Id.* at 33 (quoting *Curran v. Aleshire*, 67 F. Supp. 3d 741, 753 (E.D. La. 2014) (Zainey, J.)).

that R.C.'s spontaneous decision to stand posed a threat to the safety of others. R.C.'s physical resistance could still have posed a danger to Vado. *See Griggs*, 841 F.3d at 316 (recognizing that a handcuffed suspect did pose a danger to the officer); *cf. Bartlett*, 981 F.3d at 335 ("Notably, 'subdued' does not mean 'handcuffed.'"). Further, R.C.'s physical resistance at this time could have threatened others' safety because the home was not yet fully secured. At least one occupant had a knife on his person, and another had been hiding in the closet.[51] A reasonable officer could have believed that, had R.C. stood up and began resisting the officers, any of the other occupants—either known or unknown to the deputies at that point—would have the opportunity to attack the distracted officers.

In this light, Vado's quick decision to use force to return R.C. to the ground "was the sort of 'split-second judgment' in a difficult situation that qualified immunity is designed to protect." *See id.* Furthermore, Vado's use of force is consistent with reasonable use-of-force principles in at least two other respects. First, Vado's use of force subsided once R.C. was subdued. *Cf. Bartlett*, 981 F.3d at 335 ("Force must be reduced once a suspect has been subdued."). Review of the footage from Connolly's body camera demonstrates that the incident with R.C. lasted no more than 40 seconds.[52] Second, Vado used his physical skill to bring R.C. to the ground rather than immediately resorting to overwhelming force such as a taser or nightstick. *Cf. Newman*, 703 F.3d at 763.

---

[51] R. Doc. No. 53-1, ¶¶ 13, 60; R. Doc. No. 62-14, ¶¶ 13, 60.
[52] R. Doc. No. 53-7.

In conclusion, plaintiff has fallen far short of her burden to overcome qualified immunity with respect to Vado as to her excessive-force claim. She has failed to identify a controlling case that sufficiently addresses the particular circumstances of Vado's use of force. Accordingly, Vado is entitled to qualified immunity with respect to plaintiff's § 1983 excessive-force claim.

### ii. Deputy Connolly

The Court now determines that Connolly is also entitled to qualified immunity. Like with Vado, the Court exercises its discretion to address the second prong of qualified immunity first.

Plaintiff focuses on Connolly's use of his knee on R.C.'s back to pin her to the ground.[53] She emphasizes that Connolly had no justification to use his knee because R.C. was handcuffed and was not resisting when Vado slammed R.C. to the ground.[54] She asserts that "Connolly is culpable for the same reasons as Vado."[55]

Plaintiff has failed to satisfy her burden for several fatal reasons. First, she has not identified any case—let alone a controlling one—which clearly establishes the illegality of Connolly's use of his knee. Second, insofar as she seemingly imputes her argument regarding Vado to Connolly, *Curran* is definitively inapposite. Whereas *Curran* involves an officer's gratuitous use of force against a compliant suspect, Connolly intervened to help Vado subdue R.C. when, as clearly demonstrated in the

---

[53] R. Doc. No. 62, at 35.
[54] *Id.* at 37.
[55] *Id.* at 35.

video evidence,[56] she continued to squirm, shout, and resist Vado's orders to stay down and calm down given after he had returned her to the ground. Altogether, plaintiff has failed to identify a case sufficient to clearly establish the illegality of Connolly's use of his knee.

The Court also notes that, by the time of the incident, it was already clearly established law in the Fifth Circuit that "[p]hysical force may be necessary to ensure compliance when a suspect refus[es] to comply with instructions." *Craig v. Martin*, 49 F.4th 404, 412 (5th Cir. 2022) (internal quotation marks and citations omitted); *cf. Graham*, 490 U.S. at 396 ("Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."). Therefore, every reasonable officer in Connolly's position would have understood that the use of force, within a reasonable degree, was permissible to subdue a resistant R.C.

Plaintiff addresses the permissible degree of force that could have been used when she avers that "[a]t the very least, there is a genuine factual dispute concerning whether using a knee to a handcuffed teenager's back was reasonable."[57] However, it is plaintiff's burden to demonstrate not only a genuine dispute as to material fact but also that the degree of force alleged by plaintiff constituted a violation of clearly established law. *Bartlett*, 981 F.3d at 329–30. Since plaintiff does not even cite a case in that regard, she does not satisfy her burden to demonstrate that using a knee for

---

[56] *See* R. Doc. No. 53-7.
[57] R. Doc. No. 62, at 37.

a relatively short period of time to pin a resisting suspect violates clearly established law.[58]

### b. Deputies Vado and Connolly Are Entitled to Qualified Immunity on Plaintiff's § 1983 Failure-To-Intervene Claims.

The Court now turns to plaintiff's § 1983 failure-to-intervene claims against Vado and Connolly.  Prior to addressing the merits of defendants' qualified-immunity defense, the Court considers whether the defense was properly raised. The Court concludes that defendants did, in fact, assert qualified immunity.

#### i. Assertion of Qualified Immunity

Although defendants did not raise qualified immunity with respect to the failure-to-intervene claims in the most straightforward fashion, they have sufficiently asserted the defense with respect to these claims. In general, a defendant does not necessarily waive qualified immunity if "the words 'qualified immunity' do not appear in the portion of the officers' motion . . . tailored specifically to failure to intervene." *See Terrell v. Allgrunn*, 114 F.4th 428, 440 (5th Cir. 2024). Here, defendants did not explicitly assert qualified immunity in the failure-to-intervene sections of their motion. However, in multiple places defendants make a general assertion of qualified immunity and contend they committed no violations of any clearly established

---

[58] The Court is aware that, "in an obvious case, the *Graham* excessive-force factors themselves can clearly establish the answer, even without a body of relevant case law." *Newman v. Guedry*, 703 F.3d 757, 764 (5th Cir. 2012) (internal quotation marks and citation omitted). "The standard for obviousness is sky high." *Bartlett*, 981 F.3d at 337. In light of the discussion above, this standard is plainly not met.

right.[59] In their reply, defendants then explicitly state that qualified immunity bars plaintiff's failure-to-intervene claims.[60] Further, defendants argue with respect to both Vado and Connolly that neither failed to intervene—a contention which forms part of the qualified-immunity analysis.[61] Altogether, the Court finds that "it is evident that the officers were asserting [qualified immunity] as to [the failure-to-intervene] claim[s]." *See Terrell*, 114 F.4th at 440 (finding that defendants did assert qualified immunity as to the failure-to-intervene claims when they made general assertions of qualified immunity and argued that no failures to intervene were committed).

### ii. Analysis

In her response, plaintiff contends that Vado and Connolly failed to intervene because neither of them intervened to stop the other from using force against R.C. when she was on the ground.[62] With respect to Vado, plaintiff asserts that he "could have stopped Connolly from using an aggressive submission tactic[]," such as "having

---

[59] R. Doc. No. 53-2, at 18 ("Here, R.C fails to identify a violation of any clearly established, protected right, and therefore, Defendants are entitled to qualified immunity and summary judgment."); *id.* at 20 ("The video footage of this incident is essential as it clearly supports a finding of qualified immunity on behalf of Defendants."); *id.* at 21 ("Defendants aver that a review of the video evidence of this incident clearly warrants a finding of qualified immunity on behalf of the Defendants.").

[60] R. Doc. No. 63, at 13–14 ("Deputy Vado and Deputy Connolly are entitled to qualified immunity as to R.C.'s claims of excessive force and failure to intervene."). It should be noted that plaintiff was granted leave to file a sur-reply, in which she did not raise the issue of waiver. R. Doc. Nos. 66–68.

[61] R. Doc. No. 53-2, at 34–35, 39.

[62] R. Doc. No. 62, at 37.

a knee in someone's back or lower body."[63] With respect to Connolly, plaintiff asserts that Connolly could have "prevent[ed] Vado from holding R.C. on the ground when she could not breathe and was screaming in discomfort."[64] Significantly, plaintiff does not contend that Connolly is liable for failing to intervene when Vado brought R.C. to the ground.

An officer may be liable pursuant to § 1983 for a failure to intervene "where the officer (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013) (internal quotation marks and citations omitted). The mere presence of officers at the scene is necessary but not sufficient for liability; it must also be true that "their conduct demonstrates they acquiesced to the unconstitutional conduct engaged in by others." *Austin v. City of Pasadena*, 74 F.4th 312, 331 (5th Cir. 2023). Pursuant to clearly established federal law, an officer arriving late to the scene may assume that proper procedures have been followed. *See Terrell*, 114 F.4th at 440. "No settled Fourth Amendment principle requires that officer to second-guess the earlier steps already taken by his or her fellow officers." *White v. Pauly*, 580 U.S. 73, 80 (2017).

To overcome qualified immunity on summary judgment with respect to a failure-to-intervene claim, a plaintiff must demonstrate (1) that a factual dispute exists as to whether an official failed to intervene in a violation of a constitutional

---

[63] *Id.*
[64] *Id.*

right and (2) that such failure contravenes clearly established law. *Bartlett*, 981 F.3d at 329–30. With respect to the first prong, qualified immunity applies if it is found that a predicate violation of a constitutional right did not occur. *See Cano v. Faust*, No. 22-20189, 2023 WL 2521869, at *2 (5th Cir. Mar. 14, 2023) ("Because Cano's rights were not violated during the rectal exam, Cano has failed to make the required showing that Varner failed to prevent a violation of his rights."); *Gilbert v. French*, 364 F. App'x 76, 83 (5th Cir. 2010) ("Since we conclude no officer used excessive force in apprehending Gilbert, we simultaneously conclude that no officer unconstitutionally failed to intervene."). To satisfy the second prong, a plaintiff must demonstrate that "any reasonable officer would have known that the Constitution required them to intervene." *Bartlett*, 981 F.3d at 345.

Fifth-Circuit caselaw also makes clear that, when qualified immunity applies to the alleged predicate constitutional violation because it is not a violation of a clearly established constitutional right, qualified immunity likewise applies to the failure-to-intervene claim. In *Terrell v. Allgrunn*, the Fifth Circuit reversed the district court and entered judgment on behalf of defendants on the basis of qualified immunity with respect to plaintiffs' failure-to-intervene claims because the court had already concluded that the alleged predicate constitutional violations "were not violations of *clearly established* constitutional law." 114 F.4th 428, 440 (5th Cir. 2024) (emphasis added). In effect, a court's determination that an underlying violation of clearly established law did not occur triggers qualified immunity on the failure-to-intervene claim (if, of course, the defense is asserted as to the claim). This rule follows

from the nature of the qualified-immunity determination. If a legal principle is not clearly established, then not "every reasonable official" would interpret it as prohibiting the subject conduct. *See Wesby*, 583 U.S. at 63. Consequently, if it is not the case that every reasonable officer should have known that a particular use of force was unconstitutionally excessive, then it is likewise not the case that "any reasonable officer would have known," *Bartlett*, 981 F.3d at 345, that a constitutional violation requiring intervention was underway when that use of force was being committed.

In light of the foregoing, it is easy to resolve whether Vado is entitled to qualified immunity for his alleged failure to intervene to stop Connolly's use of force while R.C. was on the ground. The Court has already determined that Connolly did not commit a violation of clearly established constitutional law simply because he used his knee to subdue R.C. "That ends the inquiry." *See Terrell*, 114 F.4th at 440.

The Court will now resolve the issue of qualified immunity with respect to Connolly. Whereas plaintiff earlier focused on the force Vado used to bring R.C. to the ground, plaintiff now asserts that Vado used excessive force against R.C. when she was on the ground. Since the Court has not made a determination of qualified immunity as to this use of force, there is no qualified immunity to impute to Connolly's alleged failure to intervene.[65] Nonetheless, the Court concludes that Connolly is entitled to qualified immunity with respect to both prongs of the analysis.

---

[65] It should be noted, however, that defendants did assert that the force used by Vado to subdue R.C. when she was on the ground did not constitute a violation of clearly established law. *See* R. Doc. No. 53-2, at 40 ("There is **no case law** clearly establishing that a reasonable official, operating under similar circumstances, would have understood that the alleged actions and/or use of force implemented by Deputy

First, the Court concludes that Connolly is entitled to qualified immunity because Vado did not commit a predicate violation. The Court is aided in its analysis by the video footage presented by defendants.[66] Courts "assign greater weight, even at the summary judgment stage, to the facts evident from video recordings taken at the scene." *Newman*, 703 F.3d at 761 (internal quotation marks and citation omitted). However, courts will continue to draw inferences in favor of non-movants if the video evidence is not glaringly clear. *See Ramirez v. Martinez*, 716 F.3d 369, 374 (5th Cir. 2013).

Upon review of the video evidence,[67] the Court concludes that Vado did not commit a clearly established constitutional violation when he was attempting to subdue R.C. on the ground. It is apparent from the video that, after Vado brought R.C. back to the ground, Vado and then Connolly instructed R.C. to stay down, calm down and stop. However, as the video also demonstrates, R.C. resisted by continuing to move and shouting. Therefore, Vado was entitled to use a permissible degree of force. *See Craig*, 49 F.4th at 412. Critically, the video also demonstrates that the force Vado used once R.C. was on the ground was "measured," *Bartlett*, 981 F.3d at 332, and "calibrated," *Hanks*, 853 F.3d at 747. Vado placed his hand on her upper body rather than her head or face. Further, once R.C. stopped moving on the floor and was subdued, Vado plainly reduced his force. *Cf. Bartlett*, 981 F.3d at 335. Lastly, the use

---

Vado in both escorting the R.C. back to the ground and in response to her admitted physical resistance and attempts to fight and kick the deputies after she was escorted back to the ground, violated any of her constitutional rights." (emphasis in original)).

[66] R. Doc. No. 53-7.

[67] *Id.*

of force was "effective for its purpose" *Griggs*, 841 F.3d at 316, as Connolly was then able to escort a subdued R.C. out of the house and to a patrol car. Under these circumstances, Vado's use of force while R.C. was on the ground was objectively reasonable and therefore not excessive.

The Court also concludes that Connolly is entitled to qualified immunity because plaintiff has not met her burden as to the second prong of the qualified-immunity analysis. The burden was on plaintiff to prove that Connolly's failure to intervene was not only actionable but also violative of clearly established law. Since plaintiff has cited no authority clearly establishing an underlying constitutional violation by Vado or a failure to intervene by Connolly, she has not met her burden. Therefore, Connolly is also entitled to qualified immunity with respect to the failure-to-intervene claim.

### c. The Court Declines To Exercise Jurisdiction Over Plaintiff's Remaining State-Law Claims.

Having granted summary judgment to defendants Vado and Connolly on plaintiff's federal claims, the Court now turns to plaintiff's remaining state-law claims. In her second amended complaint, plaintiff asserted state-law tort claims of battery and negligence against Vado and Connolly and *respondeat superior* claims against Smith for the same.[68] Plaintiff also asserted claims against Vado and Connolly for violations of the Louisiana Constitution.[69] The Court now declines to exercise jurisdiction over these claims.

---

[68] R. Doc. No. 60, at 5–8.
[69] *Id.* at 5.

Federal district courts have supplemental jurisdiction over certain state-law claims pursuant to 28 U.S.C. § 1367. Subsection (c) of that provision permits district courts to decline exercising jurisdiction over state-law claims if

> (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). In addition to these statutory factors, district courts must also weigh the traditional common-law factors of judicial economy, convenience, fairness, and comity. *See Enochs v. Lampasas County*, 641 F.3d 155, 159 (5th Cir. 2011). "District courts enjoy wide discretion in determining whether to retain supplemental jurisdiction over a state claim once all federal claims are dismissed." *Noble v. White*, 996 F.2d 797, 799 (5th Cir. 1993).

When, as here, all federal claims are eliminated prior to trial, the "general rule" is to dismiss the supplemental state-law claims. *See Enochs*, 641 F.3d at 161 (collecting cases); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."). After considering the applicable statutory and common-law factors, the Court finds no reason to depart from the general rule.

First, the statutory factors favor dismissal of the pendent state-law claims. The Court has already disposed of all claims over which it has original jurisdiction. *Cf.* 28 U.S.C. § 1367(c)(3). Accordingly, the state-law claims necessarily predominate over

the non-existent federal claims. *See Enochs*, 641 F.3d at 159; *cf.* 28 U.S.C. § 1367(c)(2). Furthermore, the heavy balance of the common-law factors in favor of dismissal provides a "compelling reason[]" for declining jurisdiction. *See Enochs*, 641 F.3d at 159; *cf.* 28 U.S.C. § 1367(c)(4).

Second, the common-law factors definitively favor dismissal. Judicial economy would not be undermined as this Court has not made any ruling on state law or effecting the state-law claims. With respect to fairness, it is not unfair for these parties to litigate Louisiana-law claims in Louisiana state court. *See Enochs*, 641 F.3d at 160. In fact, it is fairer for the parties to litigate the state-law claims in state court because it would "procur[e] for them a surer-footed reading of applicable law." *See Gibbs*, 383 U.S. at 726. Lastly, comity demands that federal courts do not pronounce needless decisions of state law. *See Gibbs*, 383 U.S. at 726 ("Needless decisions of state law should be avoided . . . as a matter of comity.").

Upon weighing the relevant factors, the Court declines to exercise supplemental jurisdiction over plaintiff's state-law claims. Accordingly, the Court dismisses plaintiff's state-law claims without prejudice so that she may reassert them in Louisiana state court. *Cf. McIntosh v. Goings*, No. 21-cv-1719, 2022 WL 1091278, at *9 (E.D. La. Apr. 12, 2022) (Africk, J.) (dismissing McIntosh's state law claims without prejudice so that he may assert those claims in state court).

## IV. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that defendants' motion for summary judgment is **GRANTED** with respect to plaintiff's § 1983 claims against defendants Connolly and Vado, and such claims are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that plaintiff's remaining state-law claims against defendants are **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that plaintiff's motion *in limine* is **DISMISSED AS MOOT**.

New Orleans, Louisiana, December 6, 2024.

_____

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**