# United States Court of Appeals
## for the Fifth Circuit

_____

No. 24-30791

_____

United States Court of Appeals
Fifth Circuit

**FILED**

November 5, 2025

Lyle W. Cayce
Clerk

JAMIE JOHNSON, *in her capacity as tutor for R.C., a minor child*,

*Plaintiff—Appellant*,

*versus*

RANDY SMITH, *Sheriff*; CHRIS VADO, *Deputy*; BILL JOHNSON, *Sergeant*; JOHN CONNOLLY, *Deputy*,

*Defendants—Appellees*.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:24-CV-170

_____

Before HIGGINBOTHAM, HO, and DOUGLAS, *Circuit Judges*.

PER CURIAM:*

Jamie Johnson alleges St. Tammany Parish Sheriff's department officers used excessive force against her minor daughter R.C. Johnson brings claims under 42 U.S.C. § 1983, the Louisiana Constitution, and Louisiana state tort law. The district court granted summary judgment for the officers. We AFFIRM.

_____

* This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

No. 24-30791

# I.

We review the grant of summary judgment in the light most favorable for Johnson, drawing all reasonable inferences in her favor. *See Griggs v. Brewer*, 841 F.3d 308, 312 (5th Cir. 2016). And as three different video recordings captured the events at issue, we must "give greater weight, even at the summary judgment stage, to the facts evident from video recordings taken at the scene." *Id.* (citing *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011)); *accord Scott v. Harris*, 550 U.S. 372, 380–81 (2007) ("The Court of Appeals . . . should have viewed the facts in the light depicted by the videotape."); *Scott v. City of Mandeville*, 69 F.4th 249, 254 (5th Cir. 2023) ("[W]hen there is video evidence available in the record, the court is not bound to adopt the non-moving party's version of the facts if it is contradicted by the record, but rather should view the facts in the light depicted by the videotape.") (cleaned up).

On January 17, 2023, R.C. was at a school classmate's home in Covington, Louisiana. While R.C. was there, three officers from the St. Tammany Parish Sheriff's department arrived—Lieutenant Bill Johnson, Deputy Joel Bratton, and Deputy Christopher Vado—searching for a person of interest in a recent burglary. The officers approached the house, and while standing on the porch, smelled marijuana. They also saw what appeared to be a burnt marijuana cigarette on the outside table. And when Andree Prados, the classmate's mother and the homeowner, opened the door, the officers faced a strong marijuana odor from inside. So, the officers entered the house to investigate.

The scene quickly turned chaotic. A male minor ran out of the house. Catching him in the backyard, Lieutenant Johnson found him carrying a knife. When another male minor fought the officers while being patted down, they brought him to the ground, handcuffed him, and escorted him out of the

2

No. 24-30791

house. Then, Lieutenant Johnson found the person of interest hiding in a closet.

The officers began bringing everyone to the living room, and as Lieutenant Johnson escorted Prados there, R.C. tried to stop him. Video from a security camera memorializes part of the fray, showing R.C. fighting Lieutenant Johnson and Deputy Vado: lunging at them, swinging at their heads, and screaming in their faces as they try to get control of her. The two officers finally wrestled R.C. to the floor and handcuffed her as she continued to struggle. She then sat against the back of a couch.

Deputy John Connolly arrived right afterward. Two more video files document what happened next. One video file is from Deputy Connolly's body camera, and the other comes from someone's cell phone camera in the living room. In the body camera footage, just after Connolly comes into the living room, R.C. is visible sitting on the floor against the couch. Deputy Vado is next to her; Connolly goes to the other side of the room to check for weapons.

Suddenly, unannounced, R.C. starts to get up. Deputy Vado shouts "Stay on the ground!" The cell phone video shows Deputy Vado grab R.C. by the arm and bring her back to the floor as R.C. screams back "Move [inaudible]! No! No!"

Deputy Connolly starts walking back over to assist, and R.C. continues screaming at Deputy Vado. As Connolly rounds the corner of the couch, his body camera records R.C. lying on her side, visibly struggling as Deputy Vado continues to hold her down by the arm. R.C. starts to kick at the officers and shouts "Get off of me!" Connolly yells "Calm down!" and puts his hand on R.C.'s leg; she screams back and continues to kick and struggle. One of the officers says "Stop!"

3

No. 24-30791

Connolly bends down and tries to restrain R.C.'s leg using his knee and shin. She jerks her leg away, screaming "Get the f--- off of me, bro!" Although Deputy Vado is holding her by the arm, R.C. flips from her side onto her stomach and keeps kicking. Then, Deputy Connolly kneels against R.C.'s left buttocks and lower left back. The body camera pans up, showing both officers' arms as they pull R.C. off her stomach and try to keep her on her side. R.C. keeps screaming as Connolly continues to kneel. A male voice off camera says "Watch her face, she can't breathe." One of the officers responds, "If she can't breathe, she needs to chill out."

After ten seconds, just as R.C. stops physically resisting, Connolly lifts his knee. The officers stand up R.C. and take her to the sheriff's department building in Covington. R.C. later pled no contest to two counts of battery of a police officer and one count of resisting an officer.

A year later, on January 17, 2024, Johnson (R.C.'s mother) sued St. Tammany Parish Sheriff Randy Smith and five Doe defendants in the U.S. District Court for the Eastern District of Louisiana. Three of the Does were later identified as Sergeant Johnson, Deputy Connolly, and Deputy Vado. Johnson twice amended her complaint, eventually trimming the list of defendants to Sheriff Smith, Deputy Connolly, and Deputy Vado.

In the now-operative complaint, Johnson alleges that "Vado and Connolly's actions fractured R.C.'s T11 vertebra, causing R.C. intense pain and restricting her ability to walk, move, sit, and stand"; that "R.C. was hospitalized with the fractured vertebra"; that "[d]octors prescribed her Norco to address the pain and placed her in a back brace that she had to wear at all times for at least five weeks"; and that "R.C. continued to have movement limitations for the next year, causing her falls and further injuries."

No. 24-30791

Johnson advanced both federal claims and Louisiana state law claims. Against Deputy Connolly and Deputy Vado, Johnson brought excessive force claims under 42 U.S.C. § 1983 and the Louisiana Constitution, or (in the alternative) failure-to-intervene claims. She also made state law negligence and battery claims against Connolly and Vado, and sought to hold Sheriff Smith liable under state law on a *respondeat superior* theory.

Defendants moved for summary judgment. As a preliminary matter, because of R.C.'s no contest plea on battery and resisting charges, the defendants argued Johnson's § 1983 claims were barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).[1] Then, pointing to the video evidence, the officers claimed they used reasonable force to restrain an actively resistant subject. The officers sought qualified immunity on the § 1983 claims, contending they acted permissibly under clearly established law, and were not liable under state law for using reasonable force during a lawful arrest.

The district court granted summary judgment for the officers on December 6, 2024. As to Connolly and Vado, the court found that Johnson did not show clearly established law prohibited the officers' conduct, and dismissed the § 1983 claims on qualified immunity grounds. The district court next dismissed the failure-to-intervene claims, finding there were no predicate constitutional violations in which either Connolly or Vado could have intervened. Finally, with no federal claims left, the court dismissed Johnson's state law claims without prejudice to their reassertions in the Louisiana courts.

---

[1] In the § 1983 context, *Heck* requires courts to "consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of [a prior] conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Heck*, 512 U.S. at 487.

No. 24-30791

## II.

## A.

Johnson appeals all but the dismissal of her failure to intervene claims, for which she has explicitly waived appeal. We begin with the excessive force claims against Deputy Vado and Deputy Connolly. We agree with the district court that both Vado and Connolly have qualified immunity, and are not liable for excessive force.

"We review the district court's grant of summary judgment de novo." *Timpa v. Dillard*, 20 F.4th 1020, 1028 (5th Cir. 2021). Ordinarily, summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). But qualified immunity changes the calculus. A "'good-faith assertion of qualified immunity alters the usual summary judgment burden of proof,' shifting it to the plaintiff to show that the defense is not available." *Cass v. City of Abilene*, 814 F.3d 721, 728 (5th Cir. 2016) (quoting *Trent v. Wade*, 776 F.3d 368, 376 (5th Cir. 2015)).

To overcome qualified immunity, Johnson must show both "'(1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct.'" *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). "Courts of appeal are free to decide which of the two prongs of the qualified immunity analysis to address first." *Id.*

The constitutional right at issue is the Fourth Amendment's bar on excessive force. To establish that force was unconstitutional, a plaintiff "must show: '(1) an injury (2) which resulted from the use of force that was clearly excessive to the need and (3) the excessiveness of which was objectively unreasonable.'" *Ramirez v. Martinez*, 716 F.3d 369, 377 (5th Cir.

6

2013) (quoting *Rockwell v. Brown*, 664 F.3d 985, 991 (5th Cir. 2011)). "The second and third elements collapse into a single objective-reasonableness inquiry." *Ramirez v. Killian*, 113 F.4th 415, 424 (5th Cir. 2024) (quoting *Peña v. City of Rio Grande City*, 879 F.3d 613, 619 (5th Cir. 2018)).

As the officers assert qualified immunity, it is Johnson's burden to prove "that genuine issues of material fact exist regarding the reasonableness of the [officers'] conduct." *King v. Handorf*, 821 F.3d 650, 654 (5th Cir. 2016). We must pay "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [s]he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). "[T]he 'totality of the circumstances' inquiry into a use of force has no time limit," and "earlier facts and circumstances may bear on how a reasonable officer would have understood and responded to later ones." *Barnes v. Felix*, 605 U.S. 73, 80 (2025) (internal quotation marks and citation omitted).

As did the district court, for each officer, we start and end with the "clearly established law" prong of the qualified immunity analysis. We do so because Johnson offers no clearly established law applicable to either officer's conduct, and that is fatal to her arguments for both Connolly and Vado. It is Johnson's burden under the qualified immunity framework to "identify[] a case in which an officer acting under similar circumstances was held to have violated the Fourth Amendment" and to "explain[] why the case clearly proscribed the conduct of that individual officer." *Joseph ex rel. Joseph v. Bartlett*, 981 F.3d 319, 345 (5th Cir. 2020). "The Supreme Court strictly enforces the requirement to identify an analogous case and explain the analogy." *Id.* at 346.

**B.**

No. 24-30791

We address the excessive force claim against Deputy Vado first. Johnson has offered no case demonstrating Vado's conduct was unlawful; instead, she pursues an inapposite line of "clearly established" principles. Johnson argues that even if R.C. was fighting Vado before, R.C. was no longer resisting by the time she stood up, making Vado's next use of force excessive because the threat had dissipated. Johnson cites cases for the "clearly established" principle barring later, gratuitous force just because of an arrestee's "conceptually distinct" prior resistance.

This case does not fit that mold. As the Supreme Court recently reiterated in *Barnes v. Felix*, we "must look too, in this and all excessive-force cases, at any relevant events coming before" the use of force in question. *Barnes*, 605 U.S. at 83. Context is critical. And moments before the force in dispute, the living room security camera recorded R.C. aggressively confronting Deputy Vado and Lieutenant Johnson. She lunged and swung at the officers, shouted in their faces, resisted their movements, and struck Lieutenant Johnson in the head. The footage proves R.C. is tall and strong enough to put up real resistance, showing that two officers struggled to subdue her. Officers finally got R.C. handcuffed, but even then, the body camera footage shows her continuing to resist and shout.

As Johnson's brief points out, the force in dispute took place only "about a minute" after R.C.'s first outburst of violence against the officers. "[L]ater, in-the-moment facts cannot be hermetically sealed off from the context in which they arose." *Barnes*, 605 U.S. at 80 (internal quotation marks and citation omitted). R.C. was not resisting across different "conceptually distinct" incidents; she was resisting over the course of one ongoing encounter with the officers. It is true that in the seconds before she stood up, R.C. wasn't actively fighting back. But R.C.'s previous resistance reasonably influenced Vado's reaction after she suddenly stood up—not to mention that, as the district court assumed, an arrestee standing up

unannounced and screaming at officers is resistance all on its own. "Prior events may show why a reasonable officer would perceive otherwise ambiguous conduct as threatening." *Barnes*, 605 U.S. at 73–74 (citing *Plumhoff v. Rickard*, 572 U.S. 765 (2014)).

The right question, then, is whether clearly established law barred Deputy Vado from using "force with measured and ascending actions that correspond[ed] to [the] suspect's escalating verbal and physical resistance" in the overall context of the encounter. *Joseph*, 981 F.3d at 332–33 (cleaned up). Johnson's best case is *Curran v. Aleshire*, 800 F.3d 656 (5th Cir. 2015). But as the district court observed, "the facts in this case are significantly different than those in *Curran*." *Curran* is not "a case in which an officer acting under similar circumstances was held to have violated the Fourth Amendment." *Joseph*, 981 F.3d at 345.[2]

In *Curran*, a police officer (Aleshire) twice pushed a female teenager (Curran) into a wall. For both uses of force, there were factual disputes about whether Curran had been resisting. The district court therefore denied Aleshire's motion for summary judgment. On appeal, our court reiterated that "the qualified immunity defense required the resolution of disputed fact issues" not suitable for summary judgment, including "whether Curran was resisting, threatening others, or attempting to escape when Aleshire used force against her." *Curran*, 800 F.3d at 659. We dismissed Aleshire's appeal so those facts could develop in district court. But before doing so, we offered

_____

[2] The district court separately rejected Johnson's arguments about *Curran* because Johnson cited the district court opinion in that case instead of the later, published Fifth Circuit opinion. Johnson now cites that precedential Fifth Circuit opinion, which we consider because it predates the events at issue here (making it relevant to the "clearly established law" analysis).

guidance: *if* the district court *later* found Curran was not resisting, then gratuitously shoving her into the wall violated clearly established law.[3]

This principle from *Curran* is inapposite because R.C. was resisting. The security camera footage clearly depicts her resisting as she battered and fought Johnson and Vado. She resisted again moments later when she stood up and struggled against Deputy Vado and Deputy Connolly, caught on both Connolly's body camera and the cell phone video. And she pled "no contest" to criminal charges for battery and resistance. Unlike *Curran*, the district court in this case saw no dispute about resistance. We reach the same conclusion. *Curran*, which at best summarized clearly established law as to *non-resisting* arrestees, says nothing about Vado's conduct toward a *resisting* arrestee. Neither do Johnson's other cases, which similarly discuss arrestees who have stopped resisting.[4]

---

[3] *Curran*, 800 F.3d at 663 ("[T]he district court found a fact dispute concerning whether the battery and the first use of force were temporally disconnected . . . We cannot assess, given our limited interlocutory review, whether this fact dispute is not *genuine*. And we agree with the district court that the fact dispute is *material*. We therefore find no legal error in the district court's conclusion that slamming a student's head into the wall after her resistance had ceased is a violation of clearly established law.").

[4] *See Timpa*, 20 F.4th at 1034 ("We hold that the state of the law in August 2016 clearly established that an officer engages in an objectively unreasonable application of force by continuing to kneel on the back of an individual *who has been subdued*.") (emphasis added); *Carroll v. Ellington*, 800 F.3d 154, 177 (5th Cir. 2015), *cert. denied*, 580 U.S. 998 (2016) ("[T]he deputies are not entitled to qualified immunity as a matter of law for injuries Barnes sustained after he was handcuffed and restrained and *after he stopped resisting arrest*.") (emphasis added); *Aguirre v. City of San Antonio*, 995 F.3d 395, 416 (5th Cir. 2021) ("If the Officers unnecessarily placed Aguirre in the maximal-restraint position when there was no reason to believe he had committed a serious crime, that he posed a continuing threat to the Officers or public safety, *or that he was resisting the Officers' seizure or holding of him*, the Officers violated Aguirre's clearly established constitutional rights.") (emphasis added).

Johnson also cites *Killian*, but as she concedes, that case was decided more than a year and a half after the events at issue here. We must examine "the law at the time of the

No. 24-30791

Johnson offers no on-point cases to support that Vado mishandled R.C., likely because Vado's response was not objectively unreasonable. Up until the disputed use of force, Deputy Vado had watched R.C. continuously escalate the scene. She impeded officers from searching the house to secure their own safety, she hit and tried to tackle the officers, and she screamed and distracted them as they tried to get information. Given her hostile behavior only "about a minute" before, it was reasonable for Deputy Vado to expect that R.C., standing up unannounced, planned to escalate things again. And the video confirms she did just that. Deputy Vado ordered R.C. to "stay on the ground," grabbing her to stop her from standing up, but R.C. screamed "No! No!" and resisted again.

Because Johnson does not show clearly established law prohibited Deputy Vado's use of force against a resisting arrestee, she has not rebutted his assertion of qualified immunity. The district court correctly granted summary judgment for Vado on the § 1983 claim against him.

## C.

Turning to Deputy Connolly, we reach the same conclusion. Johnson recycles the same "clearly established law" arguments that she used for Vado, which again fail to demonstrate that clearly established law barred Connolly's restraint techniques.

The body camera footage shows that when Deputy Connolly arrived, R.C. was already handcuffed on the ground. She was screaming at Deputy

-----

incident" to ascertain clearly established principles. *Bush v. Strain*, 513 F.3d 492, 500 (5th Cir. 2008) (quoting *Flores v. City of Palacios*, 381 F.3d 391, 395 n.3 (5th Cir. 2004)). To the extent *Killian* discusses the law during the encounter with R.C. in January 2023, it merely restates the same inapplicable concept just discussed in *Curran*: "[a]n officer may not constitutionally use force on a *non-threatening subject offering no resistance* or merely 'passive' resistance." *Killian*, 113 F.4th at 424 (emphasis added).

No. 24-30791

Vado as Deputy Connolly entered. While Connolly surveyed the room, Vado said to R.C., "You just fought the police!" Connolly testified that these events raised his alert about R.C. as he first stepped on the scene.

Then, while Deputy Connolly helped secure the house, R.C. began to stand up and struggle with Deputy Vado. The video footage shows that R.C. resisted Vado for thirteen more seconds before Deputy Connolly made it over to help; although the body camera footage is sometimes obstructed, screaming and scuffling can be heard while Connolly walks over. The video makes clear that by the time Connolly applied his knee, R.C. was actively resisting—kicking, thrashing, and screaming. Only then did Connolly kneel down. Connolly left his leg in place for ten seconds, and the video shows him get up as soon as R.C. became more still.

As with Deputy Vado, Johnson frames the clearly established law question as whether "officers may . . . use serious force against restrained individuals who are not actively resisting." But we are to "view the facts in the light depicted by the videotape[s]." *City of Mandeville*, 69 F.4th at 254 (cleaned up); *accord Harris*, 550 U.S. at 380–81. Multiple videos prove Connolly applied force in context of an actively resistant arrestee—not, as Johnson claims, a "restrained individual[] who [was] not actively resisting." Viewing the facts as they appear on video, the real question is (again) whether under clearly established law, Connolly unreasonably used additional force to restrain an *actively resistant* R.C.—force that he removed once the resistance stopped. And in asking that question, we must remember that "the qualified immunity defense protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Killian*, 113 F.4th at 421 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

As with Deputy Vado, Johnson points to no clearly established law supporting that Connolly acted unreasonably or unlawfully. She again cites

12

No. 24-30791

cases about arrestees who have stopped resisting, but that is a different factual predicate that the videos disprove. "[E]xisting precedent must squarely govern the specific facts at issue, such that only someone who is plainly incompetent or who knowingly violates the law would have behaved as the official did." *Joseph*, 981 F.3d at 337 (cleaned up).

If anything, our decisions only underscore that escalating force is a valid response to continued resistance. *Poole v. City of Shreveport*, a factually analogous case, illustrates the point. *See* 691 F.3d 624 (5th Cir. 2012). Analyzing a scenario where an officer "pinned Poole down when he refused to comply with [another officer's] commands," we held that "[v]iewed objectively, [the officers] responded with 'measured and ascending' actions that corresponded to Poole's escalating verbal and physical resistance." *Id.* at 629. Because Poole "'actively resist[ed]' the officers' instructions," we explained, pinning him down until he stopped resisting "was not 'clearly excessive.'" *Id.* So too here.

Johnson cites no clearly established law holding that conduct like Connolly's is impermissible. Because she has not met "the requirement to identify an analogous case and explain the analogy," *Joseph*, 981 F.3d at 346, Johnson has not carried her burden to rebut Connolly's assertion of qualified immunity. The district court correctly granted summary judgment for Connolly on the excessive force claim against him.

## III.

Finally, Johnson appeals the dismissal of her Louisiana state law claims. She alleged Vado and Connolly committed battery, state law negligence, and violations of the Louisiana Constitution. She also sought liability from St. Tammany Parish Sheriff Smith under a *respondeat superior* theory. After granting summary judgment for defendants on the federal claims, the district court declined to exercise supplemental jurisdiction over

13

these remaining state law claims. "We review the decision to retain jurisdiction over the pendent state claims for abuse of discretion." *Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 585 (5th Cir. 1992) (citing *Rosado v. Wyman*, 397 U.S. 397, 401 (1970)). We find no error.

Federal courts have supplemental jurisdiction over state law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). After all federal claims are gone from a case, however, statutory and common law criteria shape supplemental jurisdiction over remaining state claims.

Under the supplemental jurisdiction statute, "[t]he district courts may decline to exercise supplemental jurisdiction" after considering four factors: "(1) whether the state claims raise novel or complex issues of state law; (2) whether the state claims substantially predominate over the federal claims; (3) whether the federal claims have been dismissed; and (4) whether there are exceptional circumstances or other compelling reasons for declining jurisdiction." *Enochs v. Lampasas Cnty.*, 641 F.3d 155, 159 (5th Cir. 2011); *see also* 28 U.S.C. § 1367(c). And at common law, the "general rule is to dismiss state claims when the federal claims to which they are pendent are dismissed," although that rule is "neither mandatory nor absolute." *Enochs*, 641 F.3d at 161 (citations omitted). Courts must "balanc[e] the values of economy, convenience, fairness, federalism, and comity." *Parker & Parsley*, 972 F.2d at 585 (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).

The statutory factors support dismissal, as the district court correctly found. By granting summary judgment for defendants, all federal claims would be dismissed. That necessarily means the remaining state claims predominate over the federal claims. Sending state claims to state court would "promote justice between the parties, by procuring for them a surer-

footed reading of applicable law" (*United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966))—particularly because Louisiana constitutional claims are involved. And the "heavy balance of the common law factors in favor of remand constitutes another compelling reason to decline jurisdiction." *Enochs*, 641 F.3d at 159.

The common law factors also promote dismissing the state claims. As the district court succinctly and correctly explained (citations omitted):

> Judicial economy would not be undermined as this Court has not made any ruling on state law or [a]ffecting the state-law claims. With respect to fairness, it is not unfair for these parties to litigate Louisiana-law claims in Louisiana state court. In fact, it is fairer for the parties to litigate the state-law claims in state court because it would "procur[e] for them a surer-footed reading of applicable law." Lastly, comity demands that federal courts do not pronounce needless decisions of state law. "Needless decisions of state law should be avoided . . . as a matter of comity."

We find the district court did not abuse its discretion by declining to exercise supplemental jurisdiction over the remaining state law claims. The district court correctly dismissed these claims without prejudice so that Johnson may pursue them in Louisiana state court.

## IV.

As Johnson fails to demonstrate that either Connolly or Vado violated clearly established law, she does not overcome the officers' assertion of qualified immunity. We therefore AFFIRM summary judgment for Connolly and Vado on the § 1983 claims against them. We also AFFIRM the dismissal of Johnson's state law claims without prejudice. Having disposed of all the claims on other grounds, we do not reach defendants' argument that Johnson's claims are barred by *Heck v. Humphrey*.